# EXHIBIT A

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | |

Estate of Marion Fayne Anderson, etc.,

                 **Plaintiff(s)**

**vs.**

American International Group, Inc. a/k/a AIG,
and National Union Fire Insurance Company of
Pittsburgh, Pa.,

                 **Defendant(s)**

**CIVIL ACTION COVERSHEET**

2016-CP-40-**06576**

| | |
|---|---|
| Submitted By: Andrew S. Radeker | SC Bar #:    73743 |
| Address: P.O. Box 50143 | Telephone #:  (803) 779-2211 |
| Columbia, SC 29250 | Fax #:     (803) 779-6700 |
| | Other: |
| | E-mail:  drew@harrisonfirm.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as
required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed,
and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (*Check all that apply*)
***If Action is Judgment/Settlement do not complete***

☒ **JURY TRIAL** demanded in complaint.     ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (*Check One Box Below*)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☒ Fraud/Bad Faith (150) | 20____-NI-____-____ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ | ☐ Notice/File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
|    Warranty (160) | | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | ☐ Other (299) _____ | ☐ Slander/Libel (380) | |
| ☐ Employment (180) | | | ☐ Other (499) _____ |
| ☐ Other (199) _____ | | ☐ Other (399) _____ | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) _____ | ☐ Transfer of Structured | ☐ Worker's Comp (960) |
| | |    Settlement Payment Rights | ☐ Zoning Board (970) |
| | |    Application (760) | ☐ Public Service Comm. (990) |
| | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| Special/Complex /Other | | ☐ Petition for Workers | |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) |    Compensation Settlement | ☐ Other (999) _____ |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) |    Approval (780) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | ☐ Other (799) _____ | |
| ☐ Other (699) _____ | ☐ Motion to Quash Subpoena in | | |
| ☐ Sexual Predator (510) |    an Out-of-County Action (660) | | |
| ☐ Permanent Restraining Order (680) | ☐ Pre-Suit Discovery (670) | | |

Submitting Party Signature: _____    Date:  November 3, 2016

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1.  The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2.  The initial ADR conference must be held within 300 days after the filing of the action.

3.  Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4.  Cases are exempt from ADR only upon the following grounds:

    a.  Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b.  Requests for temporary relief;

    c.  Appeals

    d.  Post Conviction relief matters;

    e.  Contempt of Court proceedings;

    f.  Forfeiture proceedings brought by governmental entities;

    g.  Mortgage foreclosures; and

    h.  Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5.  In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**     **You must comply with the Supreme Court Rules regarding ADR.**
                  **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS

CASE NO. 2016-CP-40-_____

Estate of Marion Fayne Anderson, Estate
No. 2015ES3200802, by Kerry Brown, its
personal representative,

      **Plaintiff,**

vs.

American International Group, Inc. a/k/a
AIG, and National Union Fire Insurance
Company of Pittsburgh, Pa.,

      **Defendants.**

**SUMMONS
(JURY TRIAL DEMANDED)**

TO THE DEFENDANTS ABOVE NAMED:

    YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to the said Complaint upon the subscriber, at his office, P. O. Box 50143, Columbia, South Carolina 29250, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint in the time aforesaid, a judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

Andrew S. Radeker
HARRISON & RADEKER, P.A.
Post Office Box 50143
Columbia, South Carolina 29250
(803) 779-2211
drew@harrisonfirm.com (email)

ATTORNEY FOR PLAINTIFF

Columbia, South Carolina

November _____, 2016

Pamela R. Mullis
MULLIS LAW FIRM
Post Office Box
Columbia, South Carolina 29202
(803) 799-9577
prmullis@mullislawfirm.com (email)

ATTORNEY FOR PLAINTIFF

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS

CASE NO. 2016-CP-40-_____

Estate of Marion Fayne Anderson, Estate
No. 2015ES3200802, by Kerry Brown, its
personal representative,

      Plaintiff,

vs.

American International Group, Inc. a/k/a
AIG, and National Union Fire Insurance
Company of Pittsburgh, Pa.,

      Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

The Plaintiff, complaining of the Defendants herein, allege:

1. The Plaintiff is a citizen and resident of the State of South Carolina and is the personal representative of the Estate of Marion Fayne Anderson, Estate No. 2015ES3200802.

2. Marion Fayne Anderson is hereinafter, sometimes, referred to as "Mr. Anderson."

3. Defendant American International Group, Inc. is also known as "AIG" and is hereinafter usually referred to as "AIG."

4. AIG has its principal place of business for operations in South Carolina in Richland County, South Carolina.

5. AIG has an office in Richland County, South Carolina, at 1201 Main Street in Columbia, South Carolina

6. Defendant National Union Fire Insurance Company of Pittsburgh, Pa., is a Pennsylvania insurance business corporation.

7. Defendant National Union Fire Insurance Company of Pittsburgh, Pa., has no certificate of authority to transact business in South Carolina.

8. Defendant National Union Fire Insurance Company of Pittsburgh, Pa., is controlled by AIG.

9. Defendant National Union Fire Insurance Company of Pittsburgh, Pa., is an entity through which AIG acted with regard to matters subject of this lawsuit.

10. Defendant National Union Fire Insurance Company of Pittsburgh, Pa., acted in concert with AIG with regard to matters subject of this lawsuit.

11. The attached affidavit of Kerry Brown is incorporated herein as if here set forth verbatim and is an integral part of this complaint.

12. Mr. Anderson had a contract of insurance with AIG, as described in the affidavit of Kerry Brown.

13. Mr. Anderson had a contract of insurance with Defendant National Union Fire Insurance Company of Pittsburgh, Pa., as described in the affidavit of Kerry Brown.

14. Mr. Anderson was the insured under the insurance policy that is involved in this case.

15. Mr. Anderson has died, as noted in the affidavit of Kerry Brown.

16. The Plaintiff now stands in the place of Mr. Anderson in the contractual relationship with AIG.

17. The Plaintiff now stands in the place of Mr. Anderson in the contractual relationship with Defendant National Union Fire Insurance Company of Pittsburgh, Pa.

18. The Plaintiff has all the rights and claims Mr. Anderson had with respect to the Defendants.

19. Mr. Anderson performed his obligations to the Defendants under the insurance policy contract subject of this case, including paying the insurance premiums.

20. Mr. Anderson became disabled.

21. Mr. Anderson's disability included hemiplegia.

2

22. Mr. Anderson's disability was covered by the insurance policy subject of this case.

23. The Defendants refused to pay disability insurance benefits to Mr. Anderson.

24. Mr. Anderson was entitled to those benefits.

25. The refusal to pay disability benefits to Mr. Anderson was willful or in reckless disregard of Mr. Anderson's rights.

26. Mr. Anderson and the Plaintiff sustained damages as a result of the refusal to pay disability insurance benefits.

27. The Defendants had no reasonable basis to support their decision to deny benefits to Mr. Anderson.

28. The refusal to pay disability insurance benefits was done in bad faith.

29. In this case and with regard to other insurance policies, and with such frequency as to indicate a general business practice, the Defendants have committed the following acts:

    a. Knowingly misrepresenting pertinent facts or policy provisions relating to coverages and providing deceptive or misleading information to their insured;

    b. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under their policies;

    c. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims;

    d. Not attempting in good faith to effect prompt, fair, and equitable settlement of claims submitted to the, in which liability has become reasonably clear; and

    e. Engaging in the unreasonable failure to pay claims.

30. The Defendants have engaged in improper claim practices.

31. The Defendants knew of Mr. Anderson's claim for insurance benefits, knew his claim for benefits was proper, and knew they would cause him to sustain loss at a vulnerable point in his life by refusing to pay him the benefits under the insurance policy he had purchased.

32. The Defendants chose to refuse to pay the benefits anyway.

33. The Defendants should be held accountable for their actions.

### FOR A FIRST CAUSE OF ACTION
**(Bad Faith – Breach of Contract)**

34. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

35. The insurance contract subject of this case was mutually binding upon Mr. Anderson and the Defendants at all times material to this case.

36. The Defendants refused to pay benefits under the insurance contract.

37. That refusal resulted from the Defendants' bad faith or unreasonable action in breach of the insurance contract and the covenant of good faith and fair dealing inherent in the insurance contract.

38. The Defendants' refusal was unreasonable.

39. The refusal was done in bad faith.

40. The Defendants were informed of the facts that showed that Mr. Anderson's disability was covered by the insurance policy subject of this case and that they were obligated to pay benefits to Mr. Anderson.

41. The refusal to pay benefits under the contract of the insurance policy proximately caused damage to Mr. Anderson and the Plaintiff.

42. The Defendants' conduct harmed Mr. Anderson at a time when he was vulnerable and needed the Defendants to fulfill their obligations to him.

4

43. The Plaintiff is entitled to the full amount of the insurance benefits/coverage under the policy.

44. The Plaintiff is also entitled to judgment for actual damages, including consequential damages, against the Defendants.

## FOR A SECOND CAUSE OF ACTION
### (Bad Faith – Statutory Liability for Attorneys' Fees)

45. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

46. The Defendants refused to pay Mr. Anderson's claim and did not pay it within 90 days after his demand for payment of the benefits due him under the insurance policy.

47. That refusal was without reasonable cause or in bad faith.

48. The Defendants are liable to the Plaintiff, in addition to any sum or amount otherwise recoverable in this case, for all reasonable attorneys' fees for the prosecution of this case against the Defendants.

## FOR A THIRD CAUSE OF ACTION
### (Bad Faith – Tort/Negligence)

49. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

50. The Defendants owed duties to Mr. Anderson and the Plaintiff to act in good faith and to pay the benefits due under the insurance policy.

51. The Defendants breached those duties.

52. The Defendants' breach of those duties was a product of their failure to use reasonable care.

53. The Defendants' breach of their duties was negligent, grossly negligent, willful, or reckless.

5

54. The Defendants' breach of their duties proximately caused damage to Mr. Anderson and the Plaintiff.

55. The Plaintiff is entitled to a judgment against the Defendants for actual damages, including consequential damages, and punitive damages.

### FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract Accompanied by Fraudulent Act)

56. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

57. The breach of the insurance contract by the Defendants was done with their fraudulent intent with regard to the breach and was accompanied by their fraudulent act or acts with regard to the breach.

58. The Defendants' breach was done with dishonesty in fact, unfair dealing, and is and was an attempt at unlawful appropriation of Mr. Anderson's and the Plaintiff's right to receive benefits (and to keep Mr. Anderson's insurance premiums without paying the coverage under the policy) by design.

59. The Plaintiff is entitled to recover actual damages, punitive damages, and the costs of this action from the Defendants as a result of this breach of contract accompanied by fraudulent act.

WHEREFORE, the Plaintiff prays:

a) For judgment against the Defendants for actual damages;

b) For judgment against the Defendants for punitive damages;

c) For judgment against the Defendants for the Plaintiff's reasonable attorney's fees;

d) For judgment against the Defendants for the Plaintiff's costs of this case; and

e) For such other and further relief as the court may deem just and proper.

Respectfully submitted,


Andrew S. Radeker
HARRISON & RADEKER, P.A.
Post Office Box 50143
Columbia, South Carolina 29250
(803) 779-2211
drew@harrisonfirm.com (email)

ATTORNEY FOR PLAINTIFF

Pamela R. Mullis
MULLIS LAW FIRM
Post Office Box
Columbia, South Carolina 29202
(803) 799-9577
prmullis@mullislawfirm.com (email)

ATTORNEY FOR PLAINTIFF

Columbia, South Carolina

November _____, 2016

7

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

Estate of Marion Fayne Anderson, Estate
No. 2015ES3200802, by Kerry R. Brown,
Jr., its personal representative,

      **Plaintiff,**

vs.

American International Group, Inc. a/k/a
AIG, and National Union Fire Insurance
Company of Pittsburgh, Pa.,

      **Defendants.**

IN THE COURT OF COMMON PLEAS

Case No. 2016-CP-40-_____

AFFIDAVIT OF
KERRY BROWN

Personally appeared before me Kerry R. Brown, Jr., who, first being duly sworn, deposes and says as follows:

1. My name is Kerry R. Brown, Jr., and I am the duly appointed personal representative of the estate of Marion Fayne Anderson, Estate No. 2015ES3200802. I have personal knowledge of the facts set forth in this affidavit and am competent to testify about them.

2. Marion Fayne Anderson went by his middle name and is referred to as Fayne in this affidavit.

3. Fayne died on May 18, 2015, after a long period of illness. At the end of his life, Fayne had suffered from a stroke and had paralysis of his right arm and leg. He also had skin cancer and liver disease. By 2014, he was permanently unable to work in any capacity and was dying. He was in significant pain and discomfort. Additionally, he was using up the last of his financial resources, and, as his primary caretaker, I was having a hard time finding money to pay for the remainder of Fayne's life.

4. As shown by the power of attorney document attached to this affidavit as Exhibit A, I held power of attorney for Fayne while he was alive.

5. Around the end of the summer of 2014, while taking care of Fayne, I discovered that he had a disability insurance policy with AIG (specifically, with their related company National Union Fire Insurance Company of Pittsburgh, Pa.). I contacted AIG, provided them with proof that I had power of attorney for Fayne, explained the situation, and started a dialogue with them. In short, I submitted a claim to them on Fayne's behalf. I let them know about his liver disease and stroke and advised that I believed him to be permanently disabled and entitled to his disability coverage under their policy.

6. I gathered some documents, which I sent to AIG. An example of information I submitted to AIG is the letter from his hospice care provider which is attached as Exhibit B to this affidavit. What is in that letter is true.

7. AIG seemed to keep putting off making a decision about whether to pay benefits under the policy. Copies of two letters from them from January 8, 2015, and February 4, 2015, are attached to this affidavit as Exhibits C and D.

8. Fayne was in foreclosure at this time, with a foreclosure case pending against him. I began to look for an attorney to represent Fayne to see if anything could be done to stop the foreclosure case or at least delay it so that Fayne could keep living in his house until AIG paid the benefits, a large chunk of which we were planning to use to pay off the two CitiMortgage mortgages Fayne had on his house.

9. In March of 2015, I received a letter from AIG, dated March 5, 2015, denying Fayne's claim for his disability benefits under the policy. A copy of that letter is attached as Exhibit E to this affidavit. I asked for a copy of the policy from AIG.

10. On March 9 of 2015, I hired the law firm of Harrison & Radeker, P.A. to represent Fayne in the foreclosure case.

11. Shortly thereafter, I got the March 11, 2015, letter and copy of "plan information" from AIG that is attached to this affidavit as Exhibit F.

12. In the foreclosure case, we quickly concluded that Fayne had no defense to the foreclosure, and so we made the best deal possible under the circumstances: a delayed foreclosure date and an agreement that Citi would drop its demand for a deficiency judgment against Fayne in the event that the house did not sell for enough to pay the mortgage debt off. We incurred $3,405.68 in attorney's fees and costs with Harrison & Radeker, P.A.

13. Fayne died, I was appointed as the personal representative for his estate, and I made the decision to sell his house in order to pay off the Citi mortgages. We sold the house in December of 2015 and paid a total of $61,501.47 from the sales proceeds to pay off the Citi mortgages.

14. To date, AIG and National Union have failed to acknowledge that Fayne had a proper claim, and they refuse to pay the benefits due under the insurance policy. They continued to draft the monthly premium payments from Fayne's account even after they denied him coverage, though.

FURTHER AFFIANT SAYETH NOT.

_Kerry Brown_
Kerry Brown

SWORN to before me this
11th day of July, 2016.

_____ (L.S.)
Notary Public for South Carolina
My Commission Expires: __6/21/2017__

3

Instrument: 2003024713          Book/Page: R 8108 : 154          DateTime: 04/15/2003 15:03:52:687          Document: 01

2003024713 FILED, RECORDED, INDEXED
04/15/2003 15:03:52:687
Rec Fee:$15.00   St Fee:$8.00
Co Fee:$8.00     Pages:3
Lexington County ROD Debra H. Gunter
POWER OF ATTORNEY Bk:Pg 8108:154

STATE OF SOUTH CAROLINA          )
                                 )        GENERAL DURABLE POWER OF
                                 )                ATTORNEY
COUNTY OF LEXINGTON              )

KNOW ALL MEN BY THESE PRESENTS, that I, Marion Fayne Anderson, the undersigned, of Lexington County, South Carolina, do hereby make, constitute and appoint Kerry R. Brown, Jr., my true and lawful attorney in fact for me and in my name, place and stead and on my behalf, and for my use and benefit.

1. To exercise or perform any act, power, duty, right or obligation whatsoever that I now have, or may hereafter acquire the legal right, power, or capacity to exercise or perform, in connection with, arising from or relating to any person, item, transaction, thing, business property, real or personal, tangible or intangible, or matter whatsoever.

2. To request, ask, demand, sue for, recover, collect, receive, and hold and possess all such sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interest, stock certificates, bonds, dividends, certificates of deposit, annuities, pension and retirement benefits, insurance benefits and proceeds, any and all documents of title, choses in action, personal and real property intangible and tangible property and property rights, and demands whatsoever become, owned by, or due, owing, payable, or belonging to me or in which I have or may hereafter acquire interest, to have, use and take all lawful means and equitable and legal remedies, procedures, and writs in my name for the collection and recovery thereof, and to adjust, sell compromise, and agree for the same, and to make, execute, and deliver for me on my behalf, and in my name, all endorsements, acquittances, releases, receipts, or other sufficient discharges for the same.

3. To lease, purchase, exchange, and acquire, and to agree, bargain and contract for the lease, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any real or personal property whatsoever, tangible or intangible, or interest thereof of such terms and conditions, and under such covenants as said attorney in fact shall deem proper.

4. To maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens, mortgages, subject to deeds of trust, and hypothecate, and in any way or manner deal with all or any part of any real or personal property whatsoever tangible or intangible or

MFR #1    BM

TRUE CERTIFIED COPY
Lexington County Register of Deeds
By _____
Date 8/4/14     No. of pgs. 3

PLAINTIFF'S
EXHIBIT
A
tabbies

This document not to scale

Instrument: 2003024713            Book/Page: R 8108 ; 155          Date/Time: 04/15/2003 15:03:52:687          Document: 01

any interest therein, that I now own or may hereafter acquire, for me in my behalf, and in my name and under such terms and conditions and under such covenants as said attorney in fact shall deem proper.

5. To conduct, engage in, and transact any and all lawful business of whatever nature or kind for me, on my behalf, and in my name.

6. To make, receive, sign, endorse, execute, acknowledge, deliver, and possess such applications, contracts, agreements, options, covenants, conveyances, deeds, trust deeds, security agreements, bills of sale, leases, mortgages, assignments, insurance policies, bills of lading, warehouse receipts, documents of title, bills, bonds, debentures, checks, drafts, bills of exchange, letters of credit, notes, stock certificates, proxies, warrants, commercial paper, receipts, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of, banks, savings and loan or other institutions or associations, proof of loss, evidences of debts, releases, and satisfactions of mortgages, liens, judgments, security agreements, and other debts and obligations and such other instruments in writing or whatever kind and nature as may be necessary or proper in the exercise of the rights and powers herein granted.

7. I grant to said attorney in fact full power and authority to do, take, and perform all and every act and thing whatsoever requisite, proper, or necessary to be done, in the exercise of any of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that said attorney in fact, or his substitute or substitutes, shall lawfully do or cause to be done by virtue of this power of attorney and the rights and powers herein granted.

8. This instrument is to be construed and interpreted as a general power of attorney. The enumeration of specific items, rights, acts, or powers herein is not intended to, nor does it, limit or restrict, and is not to be construed or interpreted as limiting or restricting, the general powers herein granted to said attorney in fact.

9. This power of attorney is durable in nature and shall not be affected by my subsequent disability or incapacity, which may render me incapable of managing my own estate of affairs and shall also not be affected by the lapse of time between the date of signing and use.  It is my intention that all acts done by my attorney in fact pursuant to this power during any period of disability of and bind myself and my heirs, devises, legatees and personal

Print Job: 153742                                           Page 3 of 3

Instrument: 2003024713        Book/Page: R 8108 : 156        DateTime: 04/15/2003 15:03:52:687        Document: 01

representatives as if I were at that time mentally competent and not disabled.

10. The rights, power and authority of said attorney in fact herein granted shall commence and be in full force and effect upon the signing hereof, and such rights, powers, and authority shall remain in full force and effect thereafter until written notice of revocation is filed with the appropriate Clerk of Court.

Executed this 15 day of April, 2003.

_Marion Fayne Anderson_
Marion Fayne Anderson

        SIGNED, SEALED PUBLISHED AND DECLARED by the Principal, Marion Fayne Anderson, as and for his Power of Attorney in the presence of us, who at the Principal's request, in the presence of the Principal and in the presence of each other, have hereto subscribed our names as witnesses hereto.

_Daphne B. Heefa_ of _Columbia, S.C._

_Bruce Hall_ of _Irmo  S C_

STATE OF SOUTH CAROLINA )
                        )
COUNTY OF LEXINGTON     )

Personally appeared before me the undersigned witnesses, who being duly sworn, says that they saw the within-named Marion Fayne Anderson sign, seal and deliver the within written Power of Attorney, and that they with the other subscribing witness, witnessed the execution thereof.

SWORN TO BEFORE ME THIS 15
day of April, 2003

_Bruce Hall_                              _Daphne B. Heefa_
Notary Public for SC                      Witness
My commission expires: 5/12/03

m.f.a. #3

_CZ B. Snell_
9/9/14

My Commission
Expires
August 24, 2015

This document not to scale



H
o
s
p
i
c

**Compassionate Care**
*Committed to Quality of Life*

November 17, 2014

Dear Sir/Madam,

The purpose of this letter is to discuss Mr. Marion Anderson's history of health concerns in addition to emphasize the continued need for care Mr. Anderson will require as his disease progresses.

Mr. Anderson suffered from a life altering stroke in July that caused right sided weakness in addition to other life debilitating side effects. Mr. Anderson was forced to stop working at this time in order to be admitted to a Rehabilitation Facility to attempt to gain some strength back.

Mr. Anderson was discharged from the Rehabilitation Facility to his home and onto hospice services in September. Hospice is currently taking care of Mr. Anderson and managing his symptoms related to End Stage Liver Failure. In addition to his diagnosis of End Stage Liver Failure, Mr. Anderson has also been diagnosed with Skin Cancer and is under the care of an Oncologist and currently receiving Chemotherapy treatments.

Unfortunately, Mr. Anderson has limited family support and is dependent upon health care providers and a couple of friends to meet his basic needs such as; grocery shopping, bathing, meal preparation and bill paying. Mr. Anderson is unable to drive and continues to suffer from right sided weakness that has resulted in multiple falls.

It would be in Mr. Anderson's best interest to remain in his home and be cared for in an environment that he is comfortable in and that is familiar. This would help prevent continued falls and help Mr. Anderson maintain a quality of life.

We ask that you take this letter and Mr. Anderson's continued need for care into consideration when deciding upon the foreclosure of his home. Please feel free to contact our organization with any additional questions or concerns. Our contact number is 803-457-4101.

Sincerely,

*Ashley Q. Hacker, LMSW*

Ashley Hacker, LMSW
Licensed Masters of Social Work


PLAINTIFF'S
EXHIBIT
B





AIG Benefit Solutions Connecticut Claim Center
P.O Box L
Beattyville, KY 41311

January 8, 2015

Mr M Anderson
811 Craft Street
West Columbia, SC 29169-6633

RE:
Policy Holder: Marion Anderson
Policy Number: 9540707 47494446
Claim Number: 101492
Underwritten by National Union Fire Insurance Company Of Pittsburgh, PA.

Dear Mr Anderson:

We are writing to provide you with an update on the status of your claim application for your (enter type of claim) claim under the above captioned policy.

At this time we are notifying you that we do require the additional time to complete our review of your claim. If any additional information is needed we will notify you.

Upon completion of our review, we will notify you in writing of our determination on your claim. We will move through the claim process as quickly as possible. If a decision cannot be made within the 30 day timeframe we will provide you with a written update notification on your claim by the end of the 30 day period.

We encourage you to provide any requested information in a timely manner as this will help expedite the claim evaluation process. Should you have any questions, please do not hesitate to contact us at 1-866-960-0772.

Sincerely,

*Marissa Gorhau*
Marissa Gorhau
Disability Case Manager
**AIG Benefit Solutions Connecticut Claim Center**

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.



**PLAINTIFF'S EXHIBIT**
tabbies
C



AIG Benefit Solutions Connecticut Claim Center
P.O Box L
Beattyville, KY 41311

February 4, 2015

Mr M Anderson
811 Craft Street
West Columbia, SC 29169-6633

RE:
Policy Holder: Marion Anderson
Policy Number: 9540707 47494446
Claim Number: 101492
Underwritten by National Union Fire Insurance Company Of Pittsburgh, PA.

Dear Mr Anderson:

We are writing to provide you with an update on the status of your claim application for your (enter type of claim) claim under the above captioned policy. At this time we are notifying you that we do require the additional time to complete our review of your claim.

Upon completion of our review, we will notify you in writing of our determination on your claim. We will move through the claim process as quickly as possible. If a decision cannot be made within the 30 day timeframe we will provide you with a written update notification on your claim by the end of the 30 day period.

We encourage you to provide any requested information in a timely manner as this will help expedite the claim evaluation process.  Should you have any questions, please do not hesitate to contact us at 1-866-960-0772.

Sincerely,

*Marissa Gorhau*
Marissa Gorhau
Disability Case Manager
**AIG Benefit Solutions Connecticut Claim Center**

---

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Compa
*This company does not solicit business in New York.



PLAINTIFF'S
EXHIBIT
D



AIG Benefit Solutions Connecticut Claim Center
P.O Box L
Beattyville, KY 41311

March 5, 2015

Mr. M F Anderson
811 Craft Street
West Columbia, SC 29169

RE:
    Policy Holder:    Marion Anderson
    Policy Number:    9540707/47494446
    Claim Number:    101492
    Underwritten by National Union Fire Insurance Company of Pittsburgh, PA.

Dear Mr. Anderson:

We are writing to advise you that we have completed our review of your request for disability benefits under the above referenced policy and are unable to approve your request for benefits. Based on a review of all information submitted to date, we have determined that you do not meet the policy requirements under the above mentioned policy.

Mr. Anderson, please note that we have reviewed the information supplied to us for the liver disease that you have been diagnosed with.

The following information was used in making this determination:
- The claimant's statement form and supporting documents received from you signed 12/8/14.
- Attending physicians statement signed 11/13/2014
- Claims examiners phone conversation with your POA Kerry Brown on 3/5/2015.

Distributing products issued by:
American General Life Insurance Company*, The United States Life Insurance Company in the City of New York, and National Union Fire Insurance Company of Pittsburgh, Pa.
*This company does not solicit business in New York.



PLAINTIFF'S
EXHIBIT
E

AIG Benefit Solutions Connecticut Claim Center
P.O Box L
Beattyville, KY 41311

Your policy states the following:

**Permanently Totally Disabled/Permanent Total Disability** as used in this rider means:

1.   That the Insured has suffered any of the following:

    a.   loss of both hands or feet; or
    b.   loss of one hand and one foot; or
    c.   loss of sight in both eyes; or
    d.   Hemiplegia;or
    e.   Paraplegia; or
    f.   Quadriplegia;

"Loss of a hand or foot" means complete severance through or above the wrist or ankle joint. "Loss of sight in both eyes" means total and irrecoverable loss of the entire sight in both eyes.

"Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs.

and

2.   the Insured is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience or training. However, with respect to an Insured for whom an occupational definition of Permanently Totally Disabled/Permanent Total Disability is not appropriate, Permanently Totally Disabled/Permanent Total Disability means, as used in this Rider, that the Insured is permanently unable to engage in any of the usual activities of a person of like age and sex whose health is comparable to that of the Insured immediately prior to the accident;

and

3.   the Insured is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

Mr. Anderson in review of the information received, you stated that, this was not an accident related injury, your condition of liver disease does not qualify under the Permanent Total Disability policy provision as you did not suffer from the following: Loss of both hands or feet; or loss of one hand and one foot; or loss of sight in both eyes; or Hemiplegia; or Paraplegia; or Quadriplegia. Therefore your Permanent Total Disability claim is not eligible for benefits.

Mr. Anderson should you elect to appeal this decision please do so in writing within 180 days following receipt of this letter. If you decide to pursue this course, we will review the matter again, and notify you of our decision no later than 45 days following the receipt of your written request. Should we need additional time beyond the 45 days, you will be notified in writing, outlining the reason for the required extension prior to the expiration of the initial 45 days.

AIG Benefit Solutions Connecticut Claim Center
P.O Box L
Beattyville, KY 41311

Appeals should be mailed to: AIG Benefit Solutions Connecticut Claim Center, P.O. Box L Beattyville, KY 41311.

Along with your letter of appeal, please provide us with any additional documents or information that you wish us to consider including but not limited to the following:

  • Medical documentation to show that you suffered the loss of both hands or feet; or loss of one hand and one foot; or loss of sight in both eyes; or Hemiplegia; or Paraplegia; or Quadriplegia due to an accident

Mr. Anderson, we hope this has been explained to your satisfaction. However, should you have any questions concerning your claim or, if we can be of further service to you, please do not hesitate to contact us at 1-866-960-0772.

Sincerely,

*Susan Calt*

Susan Calt
Disability Case Manager
**AIG Benefit Solutions Connecticut Claim Center**

National Union Fire Insurance Company of Pittsburgh, Pa.
Program Administrative Office
P.O. Box 44260
Jacksonville, FL 32231



Marion F. Anderson
Poa: Kerry Brown Jr.
811 Craft St
West Columbia, SC 29169-6633

March 11, 2015

RE:   Your Family Care Plan
      Customer Number: 47494446
      Enrollment Date: 05/15/2008

Dear Marion F. Anderson:

Thank you for your recent inquiry. Per your request, enclosed is a copy of the plan information we originally sent to you for the Plan you purchased from National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union").

We trust that this satisfies your request.  If you have any further questions, please contact customer service at 1-800-781-8280. A representative will be happy to assist you weekdays from 7 a.m. – 10 p.m. and Saturdays from 7 a.m. – 3 p.m. Eastern Time.

Thank you for choosing this Family Care Plan from National Union.  We are proud to have you as a customer, and we look forward to continuing to serve you.

Sincerely,

Mark Fraser
Senior Vice President
Direct Marketing

SNFCLPR                                                                         1303.007b



National Union Fire Insurance Company
Program Administrative Office
PO Box 44260
Jacksonville, FL 32231

Re: Customer No. 47494446
Effective  07/14/2008

Marion F. Anderson
Poa: Kerry Brown Jr.
811 Craft St
West Columbia, SC  29169-6633

Dear Marion F. Anderson,

Congratulations and welcome to the National Union customer family!  We're delighted to enclose your new accident insurance coverage documents.  Please take a few moments to review them.  These documents set out the complete details of your coverage, including benefit amounts, limitations and exclusions.  If you are 70 years of age or older on the date of the covered accident, your benefits under the policy will be reduced by fifty percent (50%).*  If your name and coverage amounts are not correct, please let us know immediately so that we can make the necessary changes.

*You made a smart decision when you enrolled for this coverage.*  Each year, accidents affect the lives of millions of Americans.  The total cost of these accidents is in the billions of dollars.**

*We'll be here when you need us.*  National Union Fire Insurance Company of Pittsburgh, Pa., is the underwriter of this accident insurance program.

*(over, please)*

*Your coverage becomes effective on the effective date shown in the enclosed documents.* Unless you call to cancel the coverage before that effective date, your payment of $16.90 will be automatically billed with your CitiMortgage payment each month your coverage remains in force. You don't have to worry about missing a payment to keep this coverage in force. Unless you tell us otherwise, there are no bills coming to your home or extra checks to write each month.

### You can count on National Union

If you have any questions about your new coverage or your billing, our experienced Customer Service Representatives are just a phone call away. Our toll free number is 800-781-8280. Our hours are 7 a.m. to 10 p.m. Eastern Time on weekdays and 7 a.m. to 3 p.m. Eastern Time on Saturday. They will be happy to help you in any way they can. In the meantime, congratulations once again for choosing National Union. We appreciate the opportunity to provide you with this valuable coverage and we look forward to serving you.

Sincerely,

*Jonathan Yee*

Jonathan Yee
Senior Vice President of Consumer Marketing
Domestic Accident & Health Division

* The benefit reduction does not apply to the Physician's Office Visit benefit, if that benefit is included in your coverage.
**National Safety Council Injury Facts, 2009 Edition

This Accident Insurance Coverage is underwritten by National Union Fire Insurance Company of Pittsburgh, Pa., with its principal place of business at 70 Pine Street, New York, NY 10270. Insurance products are NOT insured by the F.D.I.C., are not deposits of any other government agency, are not deposits or other obligations of CitiMortgage, and are not guaranteed by CitiMortgage.

0701.011 /0703.060 DED X01



## AIG Domestic Accident & Health Division

A Division of American International Companies®

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Executive Offices: 70 Pine Street, New York, NY 10270

(212) 770-7000

(a capital stock company, herein referred to as the Company)

Policyholder: CitiMortgage
Certificate Number: 47494446

### GROUP ACCIDENT INSURANCE CERTIFICATE

**ABOUT THIS CERTIFICATE.** This certificate describes accident insurance the Company provides to Insured Persons under the Group Policy (herein called the Policy) issued to the Policyholder.

**RIGHT TO EXAMINE THIS CERTIFICATE.** This certificate of insurance is issued to You, the Insured, and can be returned for any reason within the later of: (1) 30 days after it is received by You; or (2) 30 days after Your Coverage Effective Date. The certificate should be returned by mail or in person to the Company. Any premium paid will be refunded and the certificate will be treated as if it were never issued.

The President and Secretary of National Union Fire Insurance Company of Pittsburgh, Pa. witness this Certificate:

President                    Secretary

### PLEASE READ THIS CERTIFICATE CAREFULLY.

### THIS CERTIFICATE DESCRIBES ACCIDENT ONLY COVERAGE. NO COVERAGE IS PROVIDED FOR SICKNESS OR DISEASE.

A30298NUFIC-SC                              1                              63C SC

# TABLE OF CONTENTS

Schedule....................................................................................................... 3
    Classification of Eligible Persons.............................................................. 3
    Insured................................................................................................... 3
    Insured's Coverage Effective Date............................................................ 3
    Participating Organization........................................................................ 3
    Premium Payments.................................................................................. 3
    Covered Activities.................................................................................... 3
    Benefit Schedule..................................................................................... 3

Definitions.................................................................................................... 4

Insured's Effective and Termination Dates....................................................... 4

Premium....................................................................................................... 4

Benefits........................................................................................................ 5
    Maximum Amount.................................................................................... 5
    Emergency Treatment Benefit.................................................................. 5
    Family Leave Benefit............................................................................... 5
    Permanent Total Disability Benefit (Single Payment)................................... 7

Limitations.................................................................................................... 7
    Reduction Schedule................................................................................. 7

Exclusions.................................................................................................... 8

Claims Provisions.......................................................................................... 8

General Provisions......................................................................................... 9

## SCHEDULE

**CLASSIFICATION OF ELIGIBLE PERSONS:**

Class 1                    All Members of CitiMortgage

**INSURED:** Marion F. Anderson

**COVERAGE EFFECTIVE DATE:** 07/14/2008

**PARTICIPATING ORGANIZATION:** CitiMortgage
Any references to Policyholder in this Certificate, attached enrollment form(s), endorsement(s) or rider(s), shall also include the participating organization identified here.

**PREMIUM PAYMENTS:**
Monthly Premium: $16.90

**COVERED ACTIVITIES:**

All Activities except as limited by exclusions

**BENEFIT SCHEDULE:**

| Benefit | Maximum Amount |
|---|---|
| | Insured |
| Emergency Treatment<br>    If Admitted as an In-Patient<br><br>    Maximum of 2 Emergency Treatment<br>    benefits per Insured Person per Calendar<br>    Year | $1,000 |
| Family Leave<br>    Monthly Maximum Amount:<br>    $8,333.33<br>    Maximum Number of Months: 24 | 75% of Annual Earnings of the Caregiver up to the Monthly Maximum Amount |
| Permanent Total Disability | $250,000 |

The Maximum Amounts are used to determine amounts payable under each Benefit.  Actual amounts payable will not exceed the maximums, and may be less than the maximums under circumstances specified in this Certificate.

The Maximum Amounts specified above for an Insured Person who is age 70 or older on the date of an accident for which benefits are payable will be reduced by 50%.

A30298NUFIC-SC                    3                    63C SC

## DEFINITIONS

Any capitalized terms in this Certificate and any riders, endorsements, or other attached papers are to be given the meanings as ascribed in this section or as later defined.

**Age** - means the age of the Insured Person on the Insured Person's most recent birthday, regardless of the actual time of birth.

**Covered Activity (ies)** - means those activities set out in the Covered Activities section of the Schedule with respect to which Insured Persons are provided accident insurance under the Policy.

**Injury** - means bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's coverage under the Policy is in force; (2) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss; and (3) which occurs while such person is participating in a Covered Activity.

**Insured** - means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; (2) for whom premium has been paid when due; (3) while covered under the Policy; and (4) who has enrolled for coverage under the Policy, if required.

**Insured Person** – means the Insured.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: 1) the Insured Person; 2) the Insured Person's spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild); or 3) retained by the Policyholder.

**You, Your** – means the Insured.

## INSURED'S EFFECTIVE AND TERMINATION DATES

**Effective Date.** Your coverage under the Policy begins on the latest of: (1) the Policy Effective Date; (2) the date for which the first premium for Your coverage is paid when due; (3) the date You become a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; or (4) the Coverage Effective Date shown in the Schedule.

**Termination Date.** Your coverage under the Policy ends on the earliest of: (1) the date the Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date You cease to be a member of any eligible class(es) of persons, as described in the Classification of Eligible Persons section of the Schedule; or (4) the date You request, in writing, that Your coverage be terminated.

Termination of coverage will not affect a claim for a covered loss that occurred while Your coverage was in force under the Policy.

## PREMIUM

**Premiums.** The Company provides insurance in return for premium payments. The premium shown in the Schedule is payable to the Company in the manner described in the Schedule. The Company may change the required premiums due by giving the Policyholder at least 31 days advance written notice. The Company may also change the required premiums at any time when any coverage change affecting premiums is made in the Policy.

**Grace Period.** A Grace Period of 31 days will be provided for the payment of any premium due after the first. An Insured Person's coverage will not be terminated for nonpayment of premium during the Grace Period if all premiums due are paid by the last day of the Grace Period. An Insured Person's coverage will terminate on the last day of the period for which all premiums have been paid if all premiums due are not paid by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating coverage under the Policy, the Company does so in accordance with the Noncompliance with Policy Requirements provision of the General Provisions section.

No Grace Period will be provided if the Company receives notice to terminate the Insured Person's coverage under the Policy prior to a premium due date.

## BENEFITS

**Maximum Amount.** As applicable to each Benefit provided by the Policy for each Insured Person, Maximum Amount means the amount shown as the maximum amount for that Benefit for the Insured Person's class in the Benefit Schedule.

### Emergency Treatment Benefit

**Emergency Treatment Benefit.** If an Insured Person suffers an Injury that, within 72 hours of the date of the accident that caused the Injury, requires him or her to receive Medically Necessary Emergency Treatment in a Hospital emergency room or a Satellite Emergency Center, the Company will pay 100% of the applicable Emergency Treatment Benefit Maximum Amount shown in the Benefit Schedule. The maximum number of Emergency Treatment Benefits payable per calendar year per Insured Person regardless of the number of accidents incurred, is shown in the Benefit Schedule.

<u>Definitions</u>

**Emergency Treatment** – as used in this Benefit, means treatment for a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson with average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to result in:
1. Placing the health of the person (or with respect to a pregnant woman, the health of her unborn child) in serious jeopardy;
2. Serious impairment to bodily functions; or
3. Serious dysfunction of any bodily organ or part.

**Hospital** - as used in this Benefit, means a facility which: (1) is operated according to law for the care and treatment of injured and sick people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24 hour nursing service by registered nurses (R.N.'s); and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; or (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward room, wing, or other section of the hospital that is used for such purposes.

**Inpatient** - as used in this Benefit, means a person: (1) who is confined in a Hospital as a registered bed patient; and (2) for whom at least one day's room and board is charged by the Hospital unless the Insured Person is confined as an Inpatient in any military, veterans or other government supported or sponsored Hospital for which a charge for room and board is not made.

**Medically Necessary** – as used in this Benefit, means an Emergency Treatment is: (1) essential for the diagnosis, treatment and care of the Injury; (2) meets generally accepted standards of medical practice; or (3) is ordered by a Physician and performed under the Physician's care, supervision or order.

**Satellite Emergency Center** - as used in this Benefit, means a licensed facility providing outpatient care under the direction of a Physician on a 24-hour basis. Available services must include: (1) diagnostic care, including laboratory services and diagnostic x-rays; and (2) treatment or medical care, including availability of the means for stabilization of emergency medical conditions. A Satellite Emergency Center does not include a Hospital or an office maintained by a Physician for the practice of medicine or dentistry.

Family Leave Benefit

If an Insured or an Immediate Family Member is Disabled due to an Injury within 90 days of the date of the accident which caused the Injury, and

(1) an Insured takes an unpaid leave of absence or resigns from his or her Full-Time Employment to provide Continuous Care for the Disabled Immediate Family Member; or
(2) an Immediate Family Member takes an unpaid leave of absence or resigns from his or her Full-Time Employment to provide Continuous Care for the Disabled Insured

within 180 days of the date of the accident which caused the Insured or Immediate Family Member to be Disabled, the Company will pay a monthly benefit beginning 30 days from the date the Caregiver ceased receiving wages due to resignation or unpaid leave of absence to provide Continuous Care to the Disabled person.

The amount of the Family Leave Monthly Benefit will be the lesser of:

(1) The Family Leave Monthly Maximum Amount specified in the Benefit Schedule; or
(2) The result of multiplying 1/12th of the Annual Earnings of the Caregiver by the Benefit Percentage applicable to the Disabled Insured reflected in the Family Leave Benefit in the Benefit Schedule. If the Caregiver is the Insured, the benefit percentage will be determined as specified under 3 below; or
(3) The result of multiplying 1/12th of the Annual Earnings by the benefit percentage applicable to the Caregiver. The benefit percentage is reflected under the Family Leave Benefit in the Benefit Schedule.

The benefit is payable monthly as long as the Insured or Immediate Family Member remains continuously Disabled due to that Injury, but ceases on the earliest of:

(1) the date the Disabled person ceases to be Disabled due to that Injury;
(2) the date the Disabled person or the Caregiver dies;
(3) the date the Caregiver ceases to spend 30 hours per week to provide Continuous Care to the Disabled person for any reason;
(4) the date the Caregiver returns to Full-Time Employment; or
(5) the date the benefit has been paid for the Maximum Number of Months specified for the Family Leave Benefit shown in the Benefit Schedule.

The Company will pay benefits calculated at a rate of 1/30th of the monthly benefit for each day for which the Company is liable when the Insured or Immediate Family Member is Disabled for less than a full month. Only one benefit is provided for any one month of Disability, regardless of the number of Injuries causing the Disability. Only one benefit is payable under this policy for any Disability due to the same accident, regardless of the number of people Disabled, the number of times an Insured or Immediate Family Member is Disabled, or the number of people who resign or take a leave of absence to provide Continuous Care.

The Company reserves the right to request proof of voluntary termination or leave of absence from Full-Time Employment without pay prior to payment of benefits. The Company also reserves the right to request proof of Disability or continuing Disability, on the basis of all facts and circumstances, including, but not limited to, requiring an independent medical examination at the expense of the Company as often as may be reasonably required.

<u>Definitions:</u>

**Annual Earnings** – as used in this Benefit, means base annual salary for the 12 months of employment with the same employer immediately preceding resignation or leave of absence to provide Continuous Care for the Disabled person, exclusive of overtime, bonuses, tips, commissions and special compensation.

**Caregiver** – as used in this benefit, means the person who resigns or takes an unpaid leave of absence to provide Continuous Care.

**Continuous Care** – as used in this Benefit, means activities related to the physical life, health and safety of the Disabled person which may include, but are not limited to: assisting with (1) bathing; (2) dressing; (3) toileting; (4) transferring (moving in and out of bed, chair or wheelchair); (5) eating; (6) preparation of meals and (7) transportation to and from doctor appointments.

**Disabled/Disability** - as used in this Benefit, means that as the result of an Injury, the Insured, or Immediate Family Member:

(1) requires the Continuous Care of the Caregiver;
(2) is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience or training; and
(3) requires the supervision of a Physician unless the Insured or Immediate Family Member has reached his or her maximum point of recovery.

A30298NUFIC-SC                                        6                                        63C SC

**Full-Time Employment** – as used in this Benefit, means actively working, for wage or profit, for one employer for at least 30 hours per week for at least 12 consecutive months prior to the date of the accidental Injury that caused the Disability.

**Immediate Family Member** – as used in this Benefit, means spouse, mother, father, mother-in-law, father-in-law, or child. With regard to an Immediate Family Member who takes a leave of absence or resigns from his or her Full-Time Employment to provide Continuous Care, the Immediate Family Member must be at least 18 years of age.

### Permanent Total Disability Benefit (Single Payment)

**(Not Applicable to Insured Persons Age 85 or Older on the Date of the Accident).** If, as a result of an Injury, an Insured is rendered Permanently Totally Disabled within 90 days of the accident that caused the Injury, the Company will pay 100% of the Permanent Total Disability (Single Payment) Maximum Amount shown in the Benefit Schedule at the end of 24 consecutive months of such Permanent Total Disability.

The Company reserves the right, at the end of the 24 consecutive months of Permanent Total Disability to determine, on the basis of all the facts and circumstances, that the Insured is Permanently Totally Disabled, including, but not limited to, requiring an independent medical examination provided at the expense of the Company.

**Permanently Totally Disabled/Permanent Total Disability** as used in this Benefit means that the Insured:

1. has suffered any of the following:
   a. loss of both hands or feet; or
   b. loss of one hand and one foot; or
   c. loss of sight in both eyes; or
   d. Quadriplegia; or
   e. Paraplegia; or
   f. Hemiplegia;

   "Loss of a hand or foot" means complete severance through or above the wrist or ankle joint. "Loss of sight in both eyes" means total and irrecoverable loss of the entire sight in both eyes.

   "Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs.

   And

2. is permanently unable to perform the material and substantial duties of any occupation for which he or she is qualified by reason of education, experience or training; and

3. is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

### LIMITATIONS

**Reduction Schedule.** The Maximum Amount used to determine the amount payable for a loss will be reduced if an Insured Person is age 70 or older on the date of the accident causing the loss with respect to all/any of the following Benefits provided by the Policy: Emergency Treatment Benefit, Family Leave Benefit, Permanent Total Disability (Single Payment). The Maximum Amount is reduced to a percentage of the Maximum Amount that would be used if the Insured Person were under age 70 on the date of the accident, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF UNDER-AGE-70 MAXIMUM AMOUNT |
|---|---|
| 70 and older | 50% |

Premium for an Insured Person age 70 or older is based on 100% of the coverage that would be in effect if the Insured Person were under age 70.

## EXCLUSIONS

No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury.

1. suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury or autoeroticism.

2. sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3. the Insured Person's participation in a felony, riot or insurrection.

4. infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

5. declared or undeclared war, or any act of declared or undeclared war.

6. participation in any team sport or any other athletic activity, except participation in a Covered Activity.

7. full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Unearned premium for any period for which the Insured Person is not covered due to his or her active duty status will be refunded.) (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded.)

8. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the Insured Person is:
   a. riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or
   b. performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
   c. riding as a passenger in an aircraft owned, leased or operated by the Policyholder or the Insured's employer.

9. any condition for which the Insured Person is entitled to benefits under any Workers' Compensation Act or similar law.

10. the Insured Person being under the influence of intoxicants, as defined by the laws of the jurisdiction in which the accident occured.

11. the Insured Person being under the influence of drugs unless taken under the advice of a Physician.

12. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

13. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

14. the Insured Person riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

15. any loss incurred while outside the United States, its Territories or Canada.

## CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after the occurrence or commencement of an Insured Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the Insured Person to the Company at American International Companies®, Accident and Health Claims Division, P. O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the Insured Person, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in the Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include Your name, the Insured Person's name, if different, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which the Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the applicable Beneficiary Designation and Change provision.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the applicable Beneficiary Designation and Change provision.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under the Policy for any loss other than loss for which the Policy provides any periodic payment will be paid not be paid more than 60 days after the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which the Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

## GENERAL PROVISIONS

**Assignment.** You may not assign any of his or her rights, privileges or benefits under the Policy.

**Clerical Error.** Clerical error, whether by the Policyholder or the Company, will not void the insurance of any Insured Person if that insurance would otherwise have been in effect nor extend the insurance of any Insured Person if that insurance would otherwise have ended or been reduced as provided in the Policy.

**Conformity With State Statutes.** Any provision of the Policy which, on its effective date, is in conflict with the statutes of the state in which the Policy is delivered is hereby amended to conform to the minimum requirements of those statutes.

**Entire Contract; Changes.** The Policy, the Application(s), this Certificate, any individual Enrollment Forms, riders, endorsements and any other attached papers make up the entire contract between the Policyholder and the Company. In the absence of fraud, all statements made by the Policyholder or an Insured Person will be considered representations and not warranties. No written statement made by an Insured Person will be used in any contest unless a copy of the statement is furnished to the Insured Person or his or her beneficiary or personal representative.

No change in the Policy will be valid until approved by an officer of the Company. The approval must be noted on or attached to the Policy. No agent may change the Policy or waive any of its provisions.

**Incontestability.** After an Insured Person has been insured under the Policy for two year(s) during his lifetime, no statement made by You, if applicable, except a fraudulent one, will be used to contest a claim under the Policy. The Company may only contest coverage if the misstatement is made in a written instrument signed by You and a copy is given to the Policyholder, You, or the beneficiary.

**Insured Beneficiary Designation and Change.** Your designated beneficiary(ies) is (are) the person(s) so named by You as shown on the Company's records kept on the Policy.

If You are an Insured over the age of majority and legally competent, You may change Your beneficiary designation at any time, unless an irrevocable designation has been made, without the consent of the designated beneficiary(ies), by providing the Company, with a written request for change. When the request is received by the Company, whether You are then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment made by it prior to receipt of the request.

If there is no designated beneficiary or no designated beneficiary is living after Your death, the beneficiary is Your estate.

**Legal Actions.** No action at law or in equity may be brought to recover on the Policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of the Policy. No such action may be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

**Misstatement of Age.**  If premiums for the Insured Person are based on age and the Insured Person has misstated his or her age, there will be a fair adjustment of premiums based on his or her true age.  If the benefits for which the Insured Person is insured are based on age and the Insured Person has misstated his or her age, there will be an adjustment of said benefit based on his or her true age.  The Company may require satisfactory proof of age before paying any claim.

**Noncompliance with Policy Requirements.**  Any express waiver by the Company of any requirements of the Policy will not constitute a continuing waiver of such requirements.  Any failure by the Company to insist upon compliance with any Policy provision will not operate as a waiver or amendment of that provision.

**Physical Examination and Autopsy.**  The Company at its own expense has the right and opportunity to examine the person of any individual whose loss is the basis of claim under the Policy when and as often as it may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

**Workers' Compensation.**  The Policy is not in lieu of and does not affect any requirements for coverage by any Workers' Compensation Act or similar law.

# NOTICE:

Insurance Coverage Underwritten by:

# National Union Fire Insurance Company of Pittsburgh, Pa.

Administered By:

## LOTSolutions, Inc.
P.O. Box 40350
Jacksonville, Florida 32231
Telephone: 1-800-572-5838

1304.005

Marion F. Anderson
Poa: Kerry Brown Jr.
811 Craft St
West Columbia, SC 29169-6633

Marion F. Anderson
Poa: Kerry Brown Jr.
811 Craft St
West Columbia, SC    29169-6633

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) FOR THE FIFTH JUDICIAL CIRCUIT
COUNTY OF RICHLAND ) CASE NO.: 2016-CP-40-6576
)
Estate of Marion Fayne Anderson, etc., )
)
Plaintiff, )
vs. )
)
American International Group, Inc. )
a/k/a AIG and National Union Fire )
Insurance Company of Pittsburgh, Pa., )
)
Defendants. )
_____ )

**PLAINTIFF'S FIRST SET OF DISCOVERY
REQUESTS TO DEFENDANTS**

**TO:    THE ABOVE-NAMED DEFENDANTS:**

## REQUESTS FOR ADMISSIONS

Pursuant to Rule 36, South Carolina Rules of Civil Procedure, you are hereby requested to admit or deny the numbered statements below to Plaintiff's counsel at the MULLIS LAW FIRM, within thirty (30) days after service.

1. Admit the Plaintiff[1] and Defendants had a valid contract for disability insurance benefits on May 18, 2015.

2. Admit the Defendants owed a duty to the Plaintiff to investigate his disability claim in good faith.

3. Admit the Defendants owed the Plaintiff a duty to the Plaintiff to evaluate his disability claim in good faith.

4. Admit the Defendants owed the Plaintiff a duty to communicate with the Plaintiff regarding the requirements for making his disability claim.

5. Admit the Defendants owed the Plaintiff a duty to pay the disability claim if owed in good faith.

---

[1] The word "Plaintiff" as used in these requests includes the Plaintiff's decedent, Marion Fayne Anderson.

1

6.  Admit the Plaintiff was disabled pursuant to the policy with the Defendants in January 2015.

7.  Admit the Defendants had sufficient information to determine the Plaintiff was disabled January 8, 2015, pursuant to the policy.

8.  Admit the Defendants had sufficient information to determine the Plaintiff was disabled February 4, 2015 pursuant to the policy.

9.  Admit the Defendants did not fulfill their duties to the Plaintiff.

10. Admit the Defendants acted in bad faith with regard to matters subject of this case.

## PLAINTIFF'S INTERROGATORIES

Plaintiff requests the Defendants herein answer each of the following interrogatories within thirty (30) days after the service hereof under the provisions of Rule 33 of the South Rules of Civil Procedure.

1.  Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witness and indicate who has possession of such statements.

2.  Set forth a list of photographs, plats, sketches, videographic evidence or other prepared documents in possession of the Defendants that relate to the claim or defense in the case.

3.  List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

4.  For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witness.

5.     If you contend that some other person or legal entity is, in whole or in part, liable to you or to any party asserting a claim against you in this matter, identify such person or entity and describe the basis of said liability.

6.     If the Defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

7.     Please set forth a complete list of all the medical providers the Defendants have included in their claims file in consideration of the Plaintiff's claim for benefits pursuant to his policy.

8.     Please list any and all subpoenas issued, FOIA requests, criminal records requests and ISO claim searches performed on any party to this lawsuit, to this lawsuit and/or any other type of request for information or documentation related to the subject lawsuit.

9     List the names, job titles, home addresses, business addresses, and telephone numbers of all individuals employed by Defendants who were involved in any manner in the processing evaluating, reviewing and adjusting of Marion Fayne Anderson's claim.

10.    Describe in detail any incentive, contest, bonus, quota, goal, or evaluation system applicable to each and every adjuster responsible for the handling of Marion Fayne Anderson's Claim while employed with Defendants in the years 2013 to the present.

11.    Describe in detail any incentive, contest, bonus, quota, goal, or evaluation system applicable to each and every of Marion Fayne Anderson's adjuster's supervisor employed with Defendants in the years 2013 to the present.

12.    Identify by the parties involved, dates filed, docket number, courts filed in, Plaintiff and Defense Attorneys, any and all other bad faith actions in the state of South Carolina in which the Defendant has been involved in the last five years.

13.    Describe the outcome of all cases listed in your response to Interrogatory 12 to include whether the case settled or was adjudicated by a court and listing the dollar amount of any settlement or verdict.

14.    Identify by name, publisher and date of publication, any software or computer program used by Defendants in adjusting and evaluating the claim of Marion Fayne Anderson.

### PLAINTIFF'S REQUESTS TO DEFENDANTS FOR PRODUCTION

Pursuant to Rule 34, of the South Carolina Rules of Civil Procedure, you are hereby requested to produce the documents described below to Plaintiff's counsel at THE MULLIS LAW FIRM, Post Office Box 7757, Columbia, South Carolina 29202, within thirty (30) days of service hereof.

1.    Copies of any and all documents and/or videotapes, dvds, etc. identified in Defendants' Responses to Plaintiff's Interrogatories above.

2.    Copies of any and all written statements taken from any and all parties and/or witnesses related to this matter.

3.    If you assert any privilege regarding any document(s) or information requested in these discovery requests please provide a comprehensive list of all such documents and/or information, pursuant to Rule 26(B)(5), SCRCP.

4.    Please provide a copy of any and all documents received pursuant to any and all subpoenas issued, FOIA requests, criminal records requests and ISO claim search, on any party to this lawsuit, and/or any other type of request for information or documentation related to the subject lawsuit.

5.    Please provide a copy of any and all video surveillance footage including videotapes, dvds, cds, or any other format of footage as well as any and all notes related to same of or regarding the Plaintiff.

6.    A complete certified copy of Defendant's contract of insurance and/or insurance Policy with the Plaintiff.

7.    Defendants' entire claim file, including a copy of any claims notes, copies of any electronically-stored claims notes, and/or copies of any and all documents relied upon by the Defendants in making a determination regarding the Plaintiff's claim - for the Claim and/or Policy.

8.    Complete copy of all the financial records related to the policy including all payments received and the dates they were received and all payments made and the dates of payment.

9.    Copies of any statements given by any person relating to the Claim either recorded, or written, taken by any person recorded in any form or format.

10.    Any document related to or generated by any program used for the purposes of determining a value, the evaluation of or the Plaintiff's entitlement to his claim for long-term disability.

11.    All communications, letters, notes, correspondence, and/ or documents sent to or received from Plaintiff or his representative relating to the Claim, or Policy.

12.    Please provide copies of any and all documents, manuals guidelines, training manuals, instruction manuals, and or guidelines regarding best practices on how to handle a claim - that were provided to any personnel who evaluated, reviewed and/or adjusted the Plaintiff's claim.

13.    All documents that address Plaintiff's medical history for either the initial application for the policy or the claim for benefits pursuant to the policy.

14.    All job or performance evaluations for any and all adjuster, supervisors, and other Defendants' employees involved in handling the Claim, including salary and bonus information, from 2013 to the present.

15.    The personnel files for Defendants' employees involved in any way with Plaintiff's claim including but not limited to performance evaluations, goals, quotas, and bonuses.

16.    Payroll records for Defendants' employees in any way involved with Plaintiff's claim in

sufficient detail to determine payment for any incentive, bonus, or additional compensation above the base salary covering the period from 2013 to the present.

17.    Copies of any and all statistical reports prepared by Defendants' involved in Plaintiff's claim. Listed by individual adjuster and specifically including, but not limited, to number of claims handled by each adjuster; time to open and close file; percentage of claims with attorney involvement; and percentage of claims in which suit is filed by the Claimant.

18.    Reports of any consultants retained by Defendants to analyze and evaluate its claims handling practices, specifically referring, but not limited, to any reports discussing value driven claims practices and/or profitability of the claims handling process.

19.    Any document relied upon by the Defendant in making their determination the Plaintiff was not entitled to payment pursuant to the policy - which has not been previously identified above and produced.

Pamela R. Mullis
MULLIS LAW FIRM
Post Office Box 7757
Columbia, South Carolina 29202
(803) 799-9577

Columbia, South Carolina
November 29, 2016

Andrew S. Radeker
HARRISON & RADEKER, P.A.
Post Office Box 50143
Columbia, South Carolina 29250
(803) 779-2211

ATTORNEYS FOR PLAINTIFF

6

Summons and complaint of
within entitled cause received at
this office and service accepted
in accordance with law
this ____ 5 __ day of __ Dec XIX __

_Raymond W. Farmer_

Director of Insurance
and Attorney to Accept Service
Columbia, SC

STATE OF SOUTH CAROLINA
**DEPARTMENT OF INSURANCE**
P.O. BOX 100105
COLUMBIA, S.C. 29202-3105



91 7199 9991 7037 4833 9011



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 29201  $ 007.06⁰
02 1W
0001369055 DEC. 05. 2016

Presort
First Class Mail
ComBasPrice

# CERTIFIED MAIL

# RETURN RECEIPT REQUESTED

# SERVICE OF PROCESS

NATIONAL UNION FIRE INS CO OF PITTSBURGH PA
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

# EXHIBIT B



**CORPORATION SERVICE COMPANY**

NJH / ALL
**Transmittal Number: 15959312**
**Date Processed: 12/07/2016**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Eric Manne - 18th Floor<br>AIG Property Casualty<br>175 Water Street<br>Floor 15th<br>New York, NY 10038 |

| | |
|---|---|
| **Entity:** | National Union Fire Insurance Company of Pittsburgh, Pa.<br>Entity ID Number  0085137 |
| **Entity Served:** | National Union Fire Ins Co of Pittsburgh PA |
| **Title of Action:** | Estate of Marion Fayne Anderson vs. American International Group, Inc. a/k/a AIG |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Richland County Court of Common Pleas, South Carolina |
| **Case/Reference No:** | 2016-CP-40-06576 |
| **Jurisdiction Served:** | South Carolina |
| **Date Served on CSC:** | 12/06/2016 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | SC Department of Insurance on 12/05/2016 |
| **How Served:** | Certified Mail |
| Sender Information: | Andrew S. Radeker<br>803-779-2211 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com