

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ESTATE OF MARION FAYNE ANDERSON, §<br>Estate No. 2015ES3200802, §<br>by Kerry Brown, §<br>its Personal Representative, §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>NATIONAL UNION FIRE INSURANCE §<br>COMPANY OF PITTSBURGH, PA., §<br>§<br>Defendant. §<br>§ | Civil Action No.: 3:17-00032-MGL |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is an action for bad faith breach of contract and related claims arising out of a refusal to pay insurance benefits under an insurance policy. The Court has jurisdiction over this matter under 28 U.S.C. § 1332.

Pending before the Court is Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s (Defendant or NUFIC) motion for summary judgment. ECF No. 30. Having carefully considered Defendant's motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Defendant's motion for summary judgment will be granted.

## II. FACTUAL AND PROCEDURAL HISTORY

Marion Fayne Anderson (Mr. Anderson) was a resident of Lexington County, South Carolina. ECF No. 1-1 at 15. Kerry Brown is the personal representative of Plaintiff, Estate of Mr. Anderson. *Id.* at 5. Because Brown is acting on behalf of the estate, the Court will refer to him as Plaintiff.

On May 15, 2008, Mr. Anderson enrolled in a Group Accident Insurance Policy (the Policy) issued by Defendant; the Policy was effective July 14, 2008. *Id.* at 24-38. American International Group, Inc. (AIG) distributed NUFIC products, and reviewed claims under the Policy. *Id.* at 19-23. The Policy provided benefits for emergency treatment, family leave, and permanent total disability. *Id.* at 24-38.

The emergency treatment benefit provided coverage for medically necessary emergency treatment for an injury if sought within seventy-two hours of the accident that caused the injury. *Id.* at 31. The family leave benefit provided coverage for the insured's leave of absence or resignation from employment to care for a family member who was disabled due to an injury, or for a family member's leave of absence or resignation from employment to care for the insured who was disabled by an injury if the disability occurred within ninety days of the accident causing the injury, and the leave or resignation occurred within 180 days of the accident. *Id.* at 31-32. The permanent total disability benefit provided a lump-sum payment if the insured was rendered permanently totally disabled within ninety days of an accidental injury as a result of that injury; that benefit was payable after twenty-four months of permanent total disability. *Id.* at 29, 33.

Injury, which was central to all three benefits, was defined under the Policy as:

> bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured

person's coverage under the Policy is in force; (2) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss; and (3) which occurs while such person is participating in a Covered Activity.

*Id.* at 30. The Policy also contained the following exclusion:

> No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury.
> …
> 2. sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.
> …
> 13. stroke or cerebrovascular accident or event . . . .

*Id.* at 34.

In July 2014, Mr. Anderson was admitted to the hospital, suffering from diarrhea, abdominal growth, colitis, ascites, liver disease, and untreated carcinoma. ECF No. 43-2. While in the hospital, he experienced right-sided weakness, which was diagnosed as stemming from a stroke that occurred while he was in the hospital. *Id.* at 8. By the time of his hospital discharge on August 14, 2014, his right-sided weakness showed "some improvements." *Id.* at 11.

On December 8, 2014, Mr. Anderson submitted a claim for benefits under the Policy to AIG. As part of his claim, Mr. Anderson submitted a claimant's statement. ECF No. 30-3 at 2. The claimant's statement noted Mr. Anderson was disabled as a result of end-stage liver disease, having last worked June 30, 2014, and having been absent from work since July 16, 2014, as a result of this disability. *Id.* The claimant's statement provided no date of injury or description of injury. *Id.* Mr. Anderson's attending physician's statement in support of his claim noted Mr. Anderson was suffering from right-sided weakness, stroke, cirrhosis of the liver, distended abdomen, and malignant skin cancer. *Id.* at 4. The physician's statement further noted Mr. Anderson's prognosis was end stage liver disease, and opined Mr. Anderson could not return to

3

work with job modifications, but also noted Mr. Anderson had moderate impairment, but was capable of sedentary work. *Id.* at 4-5.

Via letters dated January 8 and February 4, 2015, AIG informed Mr. Anderson it required additional time to review his claim. ECF No. 1-1 at 19-20. Via letter dated March 5, 2015, AIG advised Mr. Anderson it was denying his claim for disability benefits under the Policy for failure to meet the Policy requirements. *Id.* at 21-23. AIG noted it had reviewed Mr. Anderson's claimant's statement, the attending physician's statement, and a phone conversation with Plaintiff, who was then acting as Mr. Anderson's Power of Attorney, in deciding whether to deny Mr. Anderson's claim based on his diagnosis of liver disease. *Id.* at 21. AIG stated Mr. Anderson did not claim an injury from an accident, and his liver disease was not a permanent total disability under the Policy; thus, Mr. Anderson's claim was denied. *Id.* at 22. AIG provided Mr. Anderson the opportunity to ask questions or appeal the decision. *Id.* at 22-23. Mr. Anderson died on May 18, 2015. *Id.* at 12.

On November 3, 2016, Plaintiff filed suit against then-Defendants AIG and NUFIC in the Court of Common Pleas for Richland County, South Carolina. ECF No. 1-1. Plaintiff brought claims for: 1) bad faith breach of contract; 2) statutory liability for attorneys' fees; 3) bad faith – tort/negligence; and 4) breach of contract accompanied by fraudulent act. *Id.* AIG and NUFIC removed the action to this Court on January 4, 2017. ECF No. 1. AIG was terminated from this case on December 4, 2017, ECF No. 21, leaving NUFIC as the sole Defendant in this case.

Defendant filed a motion for summary judgment on January 17, 2018. ECF No. 30. On February 16, 2018, Plaintiff responded. ECF No. 40. Defendant replied on February 28, 2018, ECF No. 43, and provided additional documents in support of its reply on March 1, 2018, ECF

No. 44. The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Defendant's motion for summary judgment.

### III. STANDARDS OF REVIEW

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted under Rule 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might "affect the outcome of the suit under the governing law." *Id.* On a motion for summary judgment, all evidence must be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

Under South Carolina law, the burden is on the insured to show his claim falls within the coverage of the insurance policy at issue. *See Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968) (citing *Coleman v. Palmetto State Life Ins. Co.*, 128 S.E.2d 699 (S.C. 1962)). Courts must enforce insurance policies according to the plain meaning of their contractual terms. *Whitlock v. Stewart Title Guar. Co.*, 732 S.E.2d 626, 628 (S.C. 2012) (citing *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 797 (S.C. 2008)). In the absence of ambiguous contractual language, the contract's language governs. *Id.* (citing *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C.

2009)). Whether a contract term is ambiguous is a question of law for the Court to decide. *Id.* (citing *McGill*, 672 S.E.2d at 574).

IV.     **CONTENTIONS OF THE PARTIES**

Defendant avers it is entitled to summary judgment on all claims. ECF No. 30. Defendant argues Mr. Anderson's claim was not covered under the Policy, was specifically excluded from coverage under the Policy, and Mr. Anderson failed to show a causal relationship between his stroke or hemiplegia and his purported disability. Defendant further advances there was no bad faith in its denial of benefits to Mr. Anderson, the statutory entitlement to attorneys' fees is inapplicable in this case, and Plaintiff's causes of action for bad faith and breach of contract accompanied by fraudulent act were insufficiently pled.

In response, Plaintiff claims he has sufficiently pled a claim for bad faith breach of contract because he has alleged Defendant failed to reasonably investigate Mr. Anderson's claim, failed to fairly evaluate the claim, and failed to communicate with Mr. Anderson regarding available coverage. Plaintiff also avers Mr. Anderson's disability, namely his stroke and the hemiplegia it caused, was covered under the Policy. Finally, Plaintiff advances Defendant failed to act in good faith because it neglected to deny Mr. Anderson's claim outright when it ostensibly knew the claim was not covered under the Policy, and thus Defendant should be estopped from denying coverage. According to Plaintiff, Defendant further acted in bad faith by denying coverage until after Mr. Anderson's death while still collecting premiums, including one collected via bank draft after Mr. Anderson's death.

V.      **DISCUSSION AND ANALYSIS**

**A) Bad Faith Breach of Contract**

To state a claim for bad faith breach of contract stemming from non-payment of benefits due under an insurance contract, plaintiff must show: 1) a binding insurance contract; 2) the insurer refused to pay benefits due under the contract; 3) the refusal to pay stemmed from the insurer's bad faith or unreasonable action, which breached the covenant of good faith and fair dealing implied in the contract; and 4) the insured was damaged by the refusal to pay the benefits. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (S.C. 1992) (citing *Bartlett v. Nationwide Mut. Fire Ins. Co.*, 348 S.E.2d 530 (S.C. Ct. App. 1986)). However, "[g]enerally, if there is a reasonable ground for contesting a claim, there is no bad faith in the denial of it." *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 562 S.E.2d 659, 661 (S.C Ct. App. 2002).

In addition to a breach of contract claim based upon bad faith refusal to pay benefits due under an insurance contract, South Carolina recognizes a cause of action for bad faith handling of a claim based upon the implied covenant of good faith and fair dealing in the insurance contract. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E. 2d 616, 618-19 (S.C. 1983) (recognized as preempted in the ERISA context by *Duncan v. Provident Mut. Life Ins. Co. of* Philadelphia, 427 S.E.2d 657 (S.C. 1993)). An insured has a valid tort claim where he "can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract . . . ." *Id.* at 619.

Plaintiff's claim for bad faith breach of contract based on denial of Mr. Anderson's claim fails. The terms of the Policy here are clear and unambiguous, and under those terms, Mr. Anderson's claim was not covered. Assuming *arguendo* Mr. Anderson could show his claim was based upon an accidental injury, both liver disease, which appears to be the basis of his claim in his claimant's statement, and stroke, which appears to be the basis for Plaintiff's claim, were

specifically excluded from coverage under the Policy. Though Plaintiff's complaint focuses on disability benefits, his response and memorandum in opposition to summary judgment aver Mr. Anderson may have been eligible for emergency treatment, family leave, and disability benefits. Under the clear language of the Policy, however, the exclusions apply to all three benefits. Thus, regardless of the benefit or benefits to which Plaintiff claims Mr. Anderson was entitled, the Policy exclusions bar his claim for benefits. As a result, Plaintiff fails to show benefits were due under the Policy, and thus fails to meet the elements required for a claim of bad faith breach of contract.

To the extent Plaintiff advances a claim for bad faith breach of contract based upon Defendant's alleged breach of the implied covenant of good faith and fair dealing by failing to reasonably investigate or evaluate Mr. Anderson's claim, that claim likewise fails. Plaintiff fails to provide any legal authority supporting the argument Defendant's investigation or evaluation of Mr. Anderson's claim was insufficient, relying instead entirely on his expert's opinion. *See* ECF No. 40 at 2-10. Plaintiff's expert concludes the claim file shows the lack of a full, fair evaluation, or indeed of any investigation, into Mr. Anderson's claims for benefits and demonstrates negligent claims handling in violation of industry standards. ECF No. 18-1 at 13.

Plaintiff's expert's opinion, however, is insufficient to defeat summary judgment. As a preliminary matter, Plaintiff's expert thoroughly reviews the language of the Policy, but fails to even mention exclusions under the Policy. As analyzed above, Mr. Anderson's claim was due to be denied because of Policy exclusions. Further, AIG's letter of March 5, 2015, shows AIG conducted an investigation into Mr. Anderson's claim, which included reviewing Mr. Anderson's claimant's statement, the attending physician's statement, and a conversation with Plaintiff conducted on March 5, 2015. That evaluation revealed Mr. Anderson's claim was not covered under the Policy. Finally, to the extent Plaintiff alleges Defendant unnecessarily delayed in

8

making its decision, Defendant did not speak with Plaintiff until March 5, 2015. That conversation helped form a basis for its denial of Mr. Anderson's claim, and occurred on the same day Defendant denied Mr. Anderson's claim.

Inasmuch as Plaintiff advances Defendant is liable for failing to communicate with Mr. Anderson regarding the types of benefits available, that claim is barred by case law. "Generally, an insurer and its agents owe no duty to advise an insured." *Trotter v. State Farm Mut. Auto Ins. Co.,* 377 S.E.2d 343, 347 (S.C. Ct. App. 1988) (citing *Nowell v. Dawn-Leavitt Agency, Inc.*, 617 P.2d 1164 (Ariz. Ct. App. 1980)). Further, an opinion – such as that from Plaintiff's expert here – is insufficient in and of itself to create such a duty. *See Trotter*, 377 S.E.2d at 351 (holding in an insurance case "opinion testimony [that insurance agent had a duty to explain risks, coverage, and policy exclusions to the insured] could not create a duty to advise, which does not exist at law."). For those reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff's cause of action for bad faith breach of contract.

**B) Statutory Liability for Attorneys' Fees**

South Carolina law provides an insurer is liable for attorneys' fees where: 1) the insurer refuses to pay a claim within ninety days after demand is made, 2) the claim is covered by the insurance policy, and 3) the trial judge has found the refusal was in bad faith or unreasonable. S.C. Code Ann. § 38-59-40(1). Plaintiff's claim fails to meet these elements. First, as analyzed above, Mr. Anderson's claim was not covered under the Policy. Second, because Mr. Anderson's claim was not covered under the Policy, the refusal to pay the claim was neither in bad faith nor unreasonable. For those reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claim for statutory attorneys' fees.

**C) Bad Faith – Tort/Negligence and Breach of Contract Accompanied by Fraudulent Act**

Plaintiff's causes of action for bad faith – tort/negligence and for breach of contract accompanied by fraudulent act both rely upon Defendant's bad faith in denying and/or handling Mr. Anderson's claim. In his bad faith cause of action, Plaintiff alleges Defendant breached duties to Mr. Anderson and Plaintiff "to act in good faith and to pay benefits due under the insurance policy." ECF No. 1-1 at 9. In his cause of action for breach of contract accompanied by fraudulent act, Plaintiff claims Defendant's "breach was done with dishonesty in fact, unfair dealing, and is and was an attempt at unlawful appropriation of Mr. Anderson's and the Plaintiff's right to receive benefits (and to keep Mr. Anderson's insurance premiums without paying the coverage under the policy)." *Id.* at 10.

Because, as analyzed above, Mr. Anderson's claim was not covered under the Policy, and there was no bad faith in Defendant's denying Mr. Anderson's claim or in Defendant's handling of Mr. Anderson's claim, Plaintiff's claims for bad faith – tort/negligence and breach of contract accompanied by fraudulent act, which rely upon Defendant's bad faith in denying and/or handling the claim, also fail. For that reason, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claims for bad faith – tort/negligence and breach of contract accompanied by fraudulent act.

## VI. CONCLUSION

In conclusion, for the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment, ECF No. 30.

**IT IS SO ORDERED.**

Signed this 22nd day of March, 2018 in Columbia, South Carolina.

                                                    s/ Mary Geiger Lewis
                                                  MARY GEIGER LEWIS
                                                  UNITED STATES DISTRICT JUDGE